UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Christie Wood, | ) | |
| on behalf of herself and others | ) | |
| similarly situated, | ) | Case No. 16 CV 7419 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Jennifer Long and | ) | |
| At World Properties, LLC, d/b/a @properties, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |
| | ) | |

---

**CLASS AND COLLECTIVE ACTION COMPLAINT**

---

NOW COMES Plaintiff, Christie Wood ("Wood") on behalf of herself and all others similarly situated, by her attorney, Lisa L. Clay, Attorney at law, and alleges as follows:

**INTRODUCTION**

1.      Wood seeks to recover unpaid overtime compensation and other damages for herself and all other employees of Defendants and other @properties agents misclassified as independent contractors.

2.      Wood seeks to recover damages for herself for retaliatory discharge and unpaid wages.

3.      Defendant At World Properties, LLC, d/b/a @properties ("@properties") purports to be the largest independent real estate brokerage firm in the state of Illinois, and operates a large network of real estate branch offices throughout Illinois.[1]

4.      Defendant @properties enters into contractual independent contractor agreements with real estate brokers and agents throughout Illinois.

5.      Defendant @properties, or the agents with whom it contracts, including but not limited to, Defendant Jennifer Long ("Long"), often hire administrative assistants or real estate assistants (hereinafter "REAs")[2] to perform various administrative, clerical and other non-exempt duties.

6.      At all times relevant, Defendant @properties, through its legal agents, has required its real estate brokers/agents to intentionally misclassify REAs as independent contractors to avoid their legal obligations to these individuals under federal and state employment and tax laws.

7.      At all times relevant, Defendants have required and continue to require that REAs sign a standardized "member agreement" contract suggesting, contrary to law, that the REAs are independent contractors.

---

[1] @properties also operates offices in Michigan, Indiana and Wisconsin, and although the practices alleged likely occur in those offices, they are not included for purposes of the collectives and classes described herein.

[2] Real estate assistants are commonly referred to as "personal assistants" and fall into two categories: licensed (i.e. those that have a real estate license) and unlicensed (those that do not have a real estate license). The REAs at issue in this case are unlicensed, and Wood recognizes that licensed REAs are by definition excluded from the classes described below. According to guidelines set forth by the Illinois Association of Realtors, if an assistant is unlicensed "it will be very difficult, if not impossible, to treat them as an independent contractor." THE P.A. MANUAL, Illinois Ass'n of Realtors, 2011, p. 6.
http://illinoisrealtor.org/sites/illinoisrealtor.org/files/downloads/PAmanual.pdf.

8.     At all times relevant, Defendants required these contracts and maintained this improper classification willfully, intentionally, and with knowledge of its unlawful purposes.

9.     The primary duties of REAs do not fall under any of the exemptions under federal or state overtime laws or authorize classification of REAs as independent contractors.

10.    Defendants routinely require REAs to work in excess of 40 hours per week. Indeed, the most recent contract signed by Wood states "This position requires the ability to work irregular hours and on short notice, as business necessities may dictate. This is not the type of position that requires regular business hours or working in an office. This is not Monday-Friday, 9 – 5 job. A flexible, get-the-work-done-on-time attitude is essential when it comes to meeting transaction deadlines. Some of the work is performed during flexible hours and is able to be performed at home. It involves the ups and downs of a Realtor schedule: The ability to go to the gym at 10 a.m and the requirement of showing buyers properties on a Saturday. Schedule Flexibility is a must." May 30, 3016 Member Agreement.

11.    After Wood retained counsel who notified Defendants of Wood's misclassification concerns, Wood was immediately terminated.

12.    Wood brings this action on behalf of herself and similarly situated current and former employees of Defendants who elect to opt-in to this action pursuant to the Fair Labor Standard Act ("FLSA"), 29 U.S.C. ¶¶ 201, et seq., and specifically the collective action provision, 29 U.S.C. ¶¶ 216(b), to remedy violations of the wage and hour provisions of the FLSA by Defendants that have deprived Wood and others similarly situated of their lawfully earned wages.

13.     Wood also brings this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of herself and all similarly situated current and former REAs who worked for Defendants in Illinois, to remedy violations of the labor laws of Illinois, Illinois Minimum Wage Law, 820 ILCS 105/1, et seq., Illinois Wage Payment and Collection Act, 820 ILCS 115/1, et seq., and Illinois One Day Rest in Seven Act, 820 ILCS 140.1, et seq.

14.     Through the conduct described in this Class and Collective Action Complaint, Defendants have violated state and federal law. Accordingly, Wood, on behalf of herself and all others similarly situated, brings these claims and seeks unpaid compensation, liquidated damages, reasonable attorneys' fees and costs, and all other available and appropriate relief to which she and other REA's are entitled.

**PARTIES**

15.     At World Properties LLC, d/b/a @properties is an LLC duly licensed to do business in Illinois, with its principal office located at 618 West Fulton Street, Chicago, IL 60661.

16.     Through its own activities in Illinois and those of its agents, subsidiaries and divisions, @properties has subjected itself to the jurisdiction of the state of Illinois.

17.     Through the relevant period, @properties employed and jointly employed Wood and similarly situated employees within the meaning of the FLSA and Illinois wage laws.

18.     @properties is a covered employer within the meaning of the FLSA and Illinois wage laws, pursuant to 29 U.S.C. § 203(d), 820 ILCS 105/3 and 820 ILCS 115/2 and at all times relevant, employed and jointly employed Wood and similarly situated employees.

19.     At all times relevant, @properties maintained control, oversight and direction over Wood and similarly situated employees.

20.     @properties employs the same policies, practices and procedures to all REAs.

21.     At all times relevant @properties' annual gross volume of sales made or business done was significantly more than $500,000.00.

22.     Jennifer Long is a real estate broker whose principal place of business is the @properties office located at 548 W. Webster Avenue, Chicago, Illinois 60614.

23.     Long is a covered employer within the meaning of the FLSA and Illinois wage laws, pursuant to 29 U.S.C. § 203(d), 820 ILCS 105/3 and 820 ILCS 115/2, an at all times relevant, employed and jointly employed Wood and similarly situated employees.

24.     At all times relevant, Long maintained control oversight and direction over Wood and similarly situated employees, including timekeeping, payroll and other employment practices that applied to them.

25.     Long applies the same employment policies, practices, and procedures, to all REAs.

26.     At all times relevant, Long's annual gross volume of sales made or business done was significantly over $500,000.00.

27.     Both Long and @properties directly and indirectly acted in the interest of an employer toward Wood and at all material times including, without limitation, controlling the terms of employment and compensation of Wood and the purported class.

28.     Long and @properties were each joint employers of Wood because each acted directly or indirectly in the interest of the other in relation to Wood and the class.

5

29.     Long and @properties commonly controlled the terms of compensation and employment of Wood and the class and are associated with one another with respect to the terms of compensation and employment of Wood and the class.

30.     Wood was employed by Defendants as an employee pursuant to 29 U.S.C. §203(e)(1), 820 ILCS 105/3(d) and 802 ILCS 115/2.

**JURISDICTION AND VENUE**

31.     This Court has subject matter jurisdiction over Wood's federal claims pursuant to 28 U.S.C. ¶¶ 1331 and 1337 and also under the FLSA pursuant to 29 U.S.C. §216(b)

32.     This Court has supplemental jurisdiction over Wood's state law claims pursuant to 28 U.S.C. ¶ 1367 because these claims are so related to the claims in the FLSA action that they form a part of the same case or controversy.

33.     Venue is proper in this district under 28 U.S.C. § 1391(b)(1) and (b)(2) because a substantial part of the acts or omissions giving rise to claims to this Collective and Class Action Complaint took place in this judicial district and because it is where Defendants reside.

34.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

**COLLECTIVE-WIDE FACTUAL ALLEGATIONS**

35.     Wood brings her First Cause of Action pursuant to FLSA, 29 U.S.C. § 216(b), on behalf of herself and all similarly situated persons who work or have worked for Defendants as REAs at any @properties offices located in the state of Illinois, between July 15, 2013 and July 15, 2016 who elect to opt-in to this action ("the FLSA Collective")

36.     All of the work that Wood and the FLSA Collective have performed has been assigned by Defendants and other agents of @properties as joint employers, parties who have been aware of all of the work that Wood and the FLSA Collective have performed.

37.     As part of their regular business practice, @properties, Wood and other agents of @properties intentionally, willfully, and repeatedly engaged in a pattern, practice and/or policy of violating the FLSA with respect to Wood and the FLSA Collective. This pattern, practice, and/or policy includes, but is not limited to:

(a)     willfully failing to pay Wood and members of the FLSA Collective overtime wages for hours that they worked in excess of 40 hours per workweek;

(b)     willfully misclassifying Wood and the members of the FLSA Collective as independent contractors;

(c)     willfully failing to record all of the time that its employees, including Wood and the FLSA Collective, have worked for the benefit of Defendants.

38.     Defendants and other agents of @properties are aware or should have been aware that federal law required them to pay employees performing non-exempt duties, including Wood and members of the FLSA Collective, an overtime premium for hours worked in excess of 40 hours per week.

39.     Wood and the FLSA Collective all perform or performed the same primary non-exempt duties.

**CLASS-WIDE FACTUAL ALLEGATIONS**

40.     Wood brings the Second Cause of Action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of herself and all persons who work or have worked for Defendants

7

as REAs at any @properties offices located in the state of Illinois between July 15, 2013 and July 15, 2016 ("the Illinois Class").

41.     The persons in the Illinois Class identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is not known to Wood, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

42.     Upon information and belief, there are at least 50 members of the Illinois Class.

43.     Defendants and other @properties agents acted or refused to act on grounds generally applicable to the Illinois Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Illinois Class as a whole.

44.     The Second Cause of Action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3). There are questions of law and fact common to the Illinois Class that predominate over any questions solely affecting individual members of the Illinois Class, including but not limited to:

(a)     whether Defendants and other @properties agents violated the Illinois wage laws as alleged herein;

(b)     whether Defendants and other @properties agents misclassified Wood and the Illinois Class as independent contractors;

(c)     whether Defendants and other @properties agents violated Illinois law pursuant to 820 Ill. Comp. Stat. 105/4a by failing and/or refusing to pay Wood and the Illinois Class earned overtime pay for hours worked in excess of 40 hours per workweek; whether

Defendants' policy of failing to pay Wood and the members of the Illinois Class was instituted willfully or in reckless disregard of the law;

(d)     whether Defendants and other @properties agents failed to keep true and accurate time and pay records for all hours worked by Wood and the Illinois Class, and other records required by the Illinois wage law;

(e)     whether Defendants and other @properties agents failed to comply with the posting and notice requirements of the Illinois wage laws;

(f)     the nature and extent of class-wide injury and the measure of damages for those injuries.

45.     Wood's claims are typical of the claims of the Illinois Class. Wood and all members of the Illinois class work, or have worked, for Defendants or other @properties agents as REAs in Illinois.

46.     Wood and members of the Illinois Class enjoy the same statutory rights under the IMWL to be paid overtime wages. Wood and Illinois Class Members have all sustained similar types of damages as a result of Defendants' failure to comply with the IMWL. Wood and the members of the Illinois Class have all been injured in that they have been uncompensated or under-compensated due to Defendants' and other @properties agents' common policies, practices, and patterns of conduct.

47.     Defendants and other @properties agents acted and refused to act on grounds generally applicable to the Illinois Class, thereby making declaratory relief with respect to the Illinois Class appropriate.

48.     Wood will fairly and adequately represent and protect the interests of the Illinois Class. Wood understands that, as the class representative, she assumes a fiduciary responsibility to the Illinois Class to represent its interests fairly and adequately. Wood recognizes that as the class representative, she must represent and consider the interests of the Illinois Class just as she would represent and consider her own interests. Wood understands that in decisions regarding the conduct of the litigation and its possible settlement, she must not favor her own interests over those of the Illinois Class. Wood recognizes that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the Illinois Class. Wood understands that in order to provide adequate representation, she must remain informed of developments in the litigation, cooperate with class counsel by providing them with information and any relevant documentary material in their possession, and testify, if required, in a deposition and in trial. There is no conflict between Wood and the Illinois Class. Wood's Consent Form is attached hereto as Exhibit 1.

49.     Wood has retained counsel competent and experience in class action employment litigation.

50.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant. The members of the Illinois Class have been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices, and procedures, Class treatment is superior because it will obviate the need

for unduly duplicative litigation that might result in inconsistent judgments about Defendants'

and other @properties agents' practices.

**FACTUAL ALLEGATIONS**

51.     At all relevant times, Wood, the members of the Illinois Class, and the FLSA

Collective (collectively "Class Members") worked as REAs for Defendants.

52.     Long is an independent contractor with @properties who as a condition of her

relationship with @properties, upon information and belief, signed a lengthy "Policies and

Procedures Manual for Independent Contractor Brokers" ("IC Manual") on or about November

1, 2014.

53.     The Independent Contractor Assistants portion of the IC Manual states as

follows: "Unlicensed assistants that will work at @properties' offices must be interviewed and

approved by the Independent Contractor's Managing Broker. Independent Contractors must

follow all requirements and prohibitions set forth by the License Act with respect to unlicensed

assistants and are fully responsible for ensuring compliance with the license act, including

Section 1450.740 of the regulations. Independent Contractors are responsible for paying their

assistants' compensation. If the assistant is licensed, Independent Contractor must issue

payment to @properties, which will then compensate the assistant per license law."

54.     Long met Wood through a neighbor. Wood went through two interviews with

Wood and was required to also meet with the managing @properties broker Rick Sobin.

55.     On July 15, 2015, Long presented Wood with a "confidential offer letter" stating

"I've enjoyed getting to know you, your drive to grow and allowing me to gain some insights

into how you can help us grow our business!" The offer provided a $1440/bi-monthly salary, a

commission after stated sales volume, and a title of Team Assistant. The letter specifically stated that, "salary shall be paid on a 1099 as an independent contractor during the probationary period," but provided no clarification as to how pay would change after the probationary period.

56.     Wood was required to sign a Team Member Agreement that stated her duties would be maintenance of an @properties database, which @properties deemed "confidential information:" and the sole and exclusive property of @properties.

57.     The Team Member Agreement also claimed that, "[t]eam member shall NOT be entitled to a guaranteed salary under after the probationary period, or any benefits," but contained no information regarding salary or benefits after the probationary period.

58.     Wood was told she would be expected to work 9 – 5 Monday – Friday and be available during non-business hours. At least 50% of her duties were performed in the office: using an @properties license from sales genie to obtain mailing addresses; reviewing mail; miscellaneous office filings; answering phones; creating and mailing marketing materials; drafting and posting Facebook updates; printing out floor plans, signs, and MLS sheets for open houses; drafting and editing MLS listings; obtaining tax records from the Cook County website; updating the DMS system; having keys made, and other duties as assigned.

59.     Wood was also told that she needed to be available 24/7 for duties inside and outside the office. Wood was frequently asked to work late and on weekends.

60.     Wood believed that after the probationary period she would become a full-time employee of @properties as a real estate assistant and be eligible for benefits and salary provided by them.

61.     Wood learned that she could not be an employee of @properties in December
of 2015 when Long reached out to @properties about obtaining an intranet login for Wood and
was told that Wood could not obtain same because she was unlicensed.

62.     Around that same time Wood expressed her frustration that she was being
asked to be available 24/7 and not being compensated for hours worked. Wood had to change
holiday plans so that she would only be gone for approximately 36 hours, and remained
available to answer emails and calls during her trip.

63.     On February 22, 2016, Wood and Long signed an Independent Contractor
Agreement for Unlicensed Assistants (the "February Agreement") so that @properties could
create a profile with @properties for email purposes. The contract claims to create an
independent contractor relationship between Wood as Independent Contractor,
@properties as Sponsoring Broker and Long as Individual Broker.

64.     The contract states that "Independent Contractor agrees and acknowledges that
there is no employment, agency, partnership, or joint venture relationship between the
Independent contractor and the Sponsoring Broker and the Individual Broker and that the
Individual Broker – not Sponsoring Broker – is solely responsible for the payment of any
compensation under this Agreement and/or for any services performed by Independent
Contractor."

65.     Exhibit A to the February Agreement states that "[a]n unlicensed assistant, on
behalf of and under the direction of a licensee, may engage in the following administrative,
clerical or personal activities without being in violation of the licensing requirements of the Act."

66.     The list includes, but is not limited to, the following:

* answer the telephone, take messages and forward calls to a licensee;

* assemble documents for a closing;

* have keys made for a company listing;

* place signs on property;

* place routine telephone calls on late rent payments;

* respond to questions by quoting directly from published information.

67.     In March and April of 2016 Wood approached Long about changing her pay structure so that she would be compensated more fairly for her contribution to the team.

68.     In May, Long indicated that Wood was not entitled to commissions unless she was licensed, and expressed concern that if Wood became licensed, Wood would no longer want to perform administrative tasks. Long stated that she wished to obtain a return on her investment in Wood as an employee, and requested a three year commitment in an administrative capacity.

69.     On or about May 30, 2016, Long and Wood signed the Long Group Member Agreement: Transaction Coordinator & Licensed Assistant (the "May 30, 2016 Member Agreement") reviewed by @properties managing broker Rick Sobin.

70.     The Position Requirements section of the Member Agreement stated that Wood "agrees to complete licensing requirements and schedule for classroom and state testing no later than June 30, 2016." Long assured Wood that she did not expect Wood to be licensed by the end of June, as the contract stated, but instead suggested that the contract would be reviewed in August.

71.     Wood was able to complete the self-study component of the requirement but was unable to sign up for the state testing. Wood has never been licensed as envisioned under the May 30 Member Agreement.

72.     The Member Agreement referenced a three year commitment but did not contain termination provisions or outline the parties' notice obligations.

73.     The Member Agreement contained a $1760/bi-monthly salary, "for a trial period beginning June 15, - August 31, 2016, in consideration of licensed and unlicensed activities…"

74.     On or about July 1, Long emailed Wood claiming that postcards had not been sent from expressdocs, a direct mail system, and requested an explanation.

75.     Wood explained that she had created the postcards, Long had approved them, and they should have gone out. The only explanation Wood posited was that there had been some sort of computer malfunction, and offered to have someone look into the computer aspect of the problem.

76.     Long said that she wanted to take the weekend to "think about things" and that she would talk to Wood after the holiday.

77.     Long and Wood met on July 5, 2016. Long asked if Wood was upset, and Wood explained that she was frustrated with the expectation that she was to be available 24/7, and that she was using her own phone plan and car for business purposes with no compensation.

78.     Long indicated that Wood had agreed to her employment terms, but Wood responded by suggesting that she agreed to those terms on the expectation that she would begin to obtain commissions. Long indicated that she did not believe Wood's recent raise was warranted, and that she should either reduce her hours or terminate Wood's employment.

79.     Long said she needed to think, and said she would call Wood that night.

80.     Wood sought out the advice of an HR professional/friend, who referred Wood to the undersigned.

81.     Ryan Maloney texted Wood on July 6, 2016 asking her to drop off a comparative market analysis (CMA) for an appraisal by 10:30 a.m. Wood said she would bring the CMA to Maloney's home to avoid inevitable traffic from a Cub's came in the vicinity of the @properties office.

82.     Wood emailed Long indicating that she had dropped off the CMA and asked when the two of them could talk.

83.     Long texted Wood at 10 a.m. on July 6, 2016 requesting a meeting a meeting several hours later. Wood explained that she needed to be at home to be available for an emergency HVAC repair.

84.     Wood requested a meeting later that day, but Long said she was not available.

85.     Long texted Wood at 12:29 p.m. on July 6, 2016 and stated "unfortunately this delay in talking does not sit well with me and so to protect @ putting tools on hold. Please call me."

86.     Wood tried to call Long several times that afternoon but Long did not pick up.

87.     Wood sent Long an email around 8 p.m. on July 6, 2016 requesting a status on her employment and a time to talk.

88.     Wood called Long at around 10 a.m. on July 7, 2016 but Long did not pick up.

89.     Wood sent Long an email at 4:30p.m. on July 7, 2016 for a status on her employment.

90.     The undersigned sent Long a letter just before 5 p.m. on July 7, 2016 expressing concern about Wood's misclassification and suggesting that Long contact the undersigned.

91.     Long emailed Wood at 5:11 p.m. on July 7, 2016 and requested that Wood return her computer and FOB immediately.

92.     Wood and Long met on Friday, July 8 at 1 p.m. Long tried to claim that she was not terminating Wood, but insisted on taking possession of the FOB and computer, effectively making it impossible for Wood to continue working.

93.     On Monday, July 11, Wood emailed Long asking for clarification on her employment status, and advised that she was working on what she could (social media) while she waited for instruction.

94.     Long never responded to Wood's emails or advised her of her employment status, although the computer, FOB and database access have never been returned to Wood.

95.     Long last paid Wood on July 1, for work performed June 15 –June 30 and did not pay Wood final compensation on her next regularly-scheduled paycheck, July 15, 2016.

96.     Wood is owed her contractual compensation for work performed, between July 1 and July 15, in addition to amounts claimed for violations herein.

97.     Although Long, @properties and other @properties agents classified Wood and other FLSA Collective and Illinois Class members as independent contractors, Long, @properties and other @properties agents controlled and directed the performance of the REAs' work, the REAs' work was within Long, @properties' and @properties agents' usual course of business, and Wood and other FLSA Collective and Illinois Class members were not in an independently established trade, occupation, profession or business.

98.     Wood was not in business for herself; rather, she depended on Long and @properties' business for the opportunity to render services to Long and @properties' clients, potential clients, and colleagues.

99.     Wood had no opportunity for profit or loss without Long and @properties. She could not deal directly or render services to clients without authority from Long and/or @properties.

100.    Wood's relationship with Long and @properties was neither temporary nor sporadic. Indeed, Wood worked 50+ hours per week for Long and @properties for over a year.

101.    Wood was required to be in the @properties office on Long's behalf three days per week from 9 a.m. until 3 p.m. to perform specifically assigned duties as described above.

102.    Wood did not maintain her own office, office equipment, staff or other services. She worked from an @properties office and used @properties office equipment including computers, faxes, telephones and general office supplies, all provided by Long and @properties.

103.    Wood was required to comply with the @properties dress code.

104.    Wood was required to use her own vehicle and phone for work-related transportation but was never reimbursed for mileage, depreciation or phone charges.

105.    Wood's work and the work performed by the FLSA Collective and Illinois Class members was in the normal course of the Defendants' business and was integrated into the business of the Defendants.

106.    The work performed by Wood, the FLSA Collective and the Illinois Class members required little skill. Wood had no training and no experience in real estate before accepting her position with Defendants.  The work performed by Wood, the FLSA Collective and the Illinois

Class members did not include managerial responsibilities or the exercise of independent judgment.

107.    Wood and the Class Members' primary duties were non-exempt duties. The majority of their time was spent performing administrative, clerical and other non-exempt duties as described herein.

108.    Wood and the Class Members did not exercise a meaningful degree of independent discretion with respect to the exercise of their duties and were required to follow the policies, practices, and procedures set by Defendants. Wood and the Class members did not have any independent discretionary authority to deviate from the policies, practices and procedures set by Defendants.

109.    Wood and Class Members' duties did not include managerial responsibilities or the exercise of independent judgment. Wood and the Class Members did not determine staffing levels, make any other major strategic or business decisions or have any substantive role in the business.

110.    Defendants exercised almost complete control over Wood, the FLSA Collective's and the Illinois Class members' work. REA's are not allowed to hold open houses, conduct inspections or walk-throughs, negotiate contracts, or have any other client interaction because they are not licensed.

111.    Wood and the FLSA Collective and Illinois Class members were paid salaries and offered incentive compensation if the office reached certain goals, which in Wood's case, were never reached.

112.     Throughout their employment with Defendants, Wood, the FLSA Collective and the Illinois Class members consistently worked more than 40 hours per workweek. Wood estimates that she worked at least 5 hours on the weekends, and was routinely working until 7 or 8 during the week, for an average of 50 – 55 hours per week.

113.     Defendants were aware that Wood and the Class Members worked more than 40 hours per workweek, yet it failed to pay them any overtime compensation for any hours worked over 40 in a workweek.

114.     Defendants did not keep accurate records of hours worked by Wood and the Class Members. That is, Wood's and the Class Members' hours are not recorded on paystubs, and Wood and the Class Members were never required to clock in or out, or otherwise record their time.

115.     Upon information and belief, the decision to classify Wood and the Class Members as independent contractors was made centrally, blessed by legal counsel, and not on a person-by-person basis.

116.     Defendants' violations have been willful and intentional. While they have known that Wood and other REA's performed non-exempt duties as their primary duties and regularly worked more than forty hours per workweek, it classified REA's as independent contractors and failed to pay them overtime for the hours they worked over 40 in a workweek.

117.     As a result of Defendants' willful violations of the FLSA and related Illinois wage laws, Wood, the FLSA Collective and the Illinois Class have suffered damages in that they have not received proper compensation in accordance with the FLSA and the Illinois wage laws.

**FIRST CAUSE OF ACTION**
**Fair Labor Standards Act, 20 U.S.C. ¶¶ 201 et seq.**
**On behalf of Wood and the FLSA Collective**

118.    Wood realleges and incorporates by reference all preceding paragraphs herein.

119.    Defendants and other @properties agents have engaged in a widespread pattern and practice of violating the FLSA, as detailed in the factual allegations contained above.

120.    At all times relevant hereto, Wood and the FLSA Collective were engaged in commerce and/or the production of sale or goods for commerce within the meaning of 29 U.S.C. §§ 203(b) and 207(a).

121.    At all times relevant hereto, Wood and the FLSA Collective were or have been employees within the meaning of 29 U.S.C. § 203(e) and 207(a).

122.    At all times relevant hereto, Defendants have been employers of Wood and the FLSA Collective members, engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 203(b) and 207(a).

123.    The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 207, and supporting federal regulations apply to Defendants and protect Wood and the FLSA Collective.

124.    Defendants and other @properties agents have failed to pay Wood and the FLSA Collective overtime wages for hours that they worked in excess of 40 hours in a workweek and to which they are entitled under the FLSA.

125.    Defendants' violations of the FLSA, and the violations of other @properties agents, as described in this Complaint, have been willful and intentional. Defendants and other @properties agents failed to make a good faith effort to comply with the FLSA with respect to their compensation of Wood and other similarly situated current and former employees.

126.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

127.    As a result of Defendants' and other @properties agents' willful actions and violations of the FLSA, Wood and all other similarly situated employees have suffered damages by being denied overtime wages under the Fair Labor Standards Act.

128.    Based on the foregoing, Defendants' willful conduct in this regard entitles Wood and other similarly situated REA's who opt into this litigation to compensation for all overtime hours worked, liquidated damages, attorneys' fees and court costs pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**Illinois wage laws:  820 ILCS 105/4 et seq; 56 Ill. Admin. Code § 210.400, et seq;**
**820 ILCS 115/1, et seq; 820 ILCS 140/1, et seq.**

129.    Wood, on behalf of herself and the Illinois Class, realleges and incorporates by reference all preceding paragraphs herein.

130.    Defendants and other @properties agents have engaged in a widespread pattern and practice of violating the overtime provisions of the Illinois wage laws stated herein.

131.    At all relevant times, Defendants and other @properties agents have been, and continue to be, employers within the meaning of the Illinois wage laws. At all relevant times, Defendants and other @properties agents employed employees, including Wood and the members of the Illinois Class, within the meaning of the Illinois wage laws.

132.    Wood and the members of the Illinois Class are covered by the Illinois wage laws stated herein.

133.     The Illinois wage laws require Defendants and other @properties agents to pay overtime compensation to all non-exempt employees for all hours worked over forty hours per workweek.

134.     Through the Illinois Class period, Wood and the Illinois Class regularly worked in excess of forty hours in a workweek. Wood and the members of the Illinois Class were non-exempt employees, not independent contractors, entitled to overtime compensation for all overtime hours worked.

135.     Defendants failed to pay Wood and the Illinois Class earned overtime wages at a wage rate of one and half times their regular rate, a rate to which they are entitled under the Illinois wage laws.

136.     Defendants and other @properties agents failed to make and keep true and accurate records of the hours worked each day in each workweek by Wood and the Illinois Class as required by the Illinois age laws.

137.     As a direct and proximate result of the Defendants' and other @properties agents' unlawful conduct, as set forth above herein, Wood and the Illinois Class have sustained damages, including but not limited to, loss of earnings for hours of overtime worked on behalf of Defendants, pre-judgment interest, costs and attorneys' fees, pursuant to statute and other applicable law.

**THIRD CAUSE OF ACTION – WOOD SOLELY AGAINST BOTH DEFENDANTS**
**Retaliatory Discharge in Violation of the Public Policy of Illinois**

138.     Wood, on behalf of herself solely, realleges and incorporates by reference all preceding paragraphs herein.

139.    The State of Illinois has a strong public policy to protect the health and welfare of its employees, and entitle them to exercise their rights under Illinois wage laws.

140.    Wood was wrongfully discharged in retaliation for notifying her joint employers of the illegality of her classification.

141.    As a result of Defendant's wrongful actions, Wood has suffered lost wages, loss of other employment benefits, loss of employment and its related security, emotional distress, loss of employment opportunities, and other damages.

### FOURTH CAUSE OF ACTION – WOOD SOLELY AGAINST LONG
### Wage Payment and Collection Act for Unpaid Salary

142.    Wood, on behalf of herself solely, realleges and incorporates by reference all preceding paragraphs herein.

143.    Wood is an "employee" under the terms of the IWPCA.

144.    Long is an "employer" under the terms of the IWPCA.

145.    Wood is due payment for work performed from July 1, 2016 to July 15, 2016.

146.    Defendants, collectively, violated Section 5 of the IWPCA by failing to provide Wood with her final compensation at the time of separation.

**WHEREFORE**, Plaintiff Christine Wood respectfully requests:

(a)    Immediate payment of wages owed to Wood for work performed in July of 2016;

(b)     Entry of judgment for appropriate statutory penalties, including but not limited to the 2% described in Section 14 of the IWPCA;

(c)    Designation of this action as a collective action pursuant to he FLSA and prompt issuance of notice pursuant to 29 U.S.C. § 216(b);

(d)     Certification of the state law claims in this action as a class action pursuant to federal rule of civil procedure 23;

(e)     Designation of Plaintiff Wood as Class Representative;

(f)     Designation of the undersigned as Class Counsel;

(g)     Issuance of a declaratory judgment that the practices complained of herein are unlawful;

(h)     Entry of appropriate equitable and injunctive relief, including but not limited to an order enjoining Defendants from continuing their unlawful practices;

(i)     Entry of judgment for paid overtime wages under the Fair Labor Standards Act and the Illinois wage laws;

(j)     Entry of judgment for liquidated damages under the Fair Labor Standards Act and the Illinois wage laws;

(k)     Entry of judgment for reinstatement or front pay for retaliatory discharge;

(l)     Entry of judgment for compensatory damages for retaliatory discharge;

(m)     Entry of judgment for lost wages including back pay for retaliatory discharge;

(n)     Entry of judgment in an amount to compensate her for lost future earnings for retaliatory discharge;

(o)     Entry of judgment for punitive damages for retaliatory discharge;

(p)     Entry of judgment awarding pre-judgment and post-judgment interest for FLSA, Illinois wage laws and retaliatory discharge;

(q)     Entry of judgment reflecting a reasonable incentive award for Wood to

        compensate her for the time and effort she spent protecting the interests of

        other REA's, and the risks she undertook under the FLSA;

(r)     Entry of judgment for attorneys' fees and costs under the Fair Labor Standards

        Act and the Illinois wage laws and retaliatory discharge;

(s)     Award of other relief the court deems just and equitable.


**JURY TRIAL DEMANDED**


_____/s/_Lisa L. Clay_____
Lisa L. Clay, Attorney at Law
345 North Canal Street, Suite C202
Chicago, Illinois 60606
Phone: 312.753.5302
lclayaal@gmail.com
ARDC # 6277257