```
                 IN THE UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
                          EASTERN DIVISION

CHRISTIE WOOD, on behalf of herself  )   Docket No. 16 C 7419
and others similarly situated,       )
                                     )
                 Plaintiff,           )
                                     )
           vs.                       )
                                     )
JENNIFER LONG and AT WORLD           )
PROPERTIES, LLC, d/b/a @properties,  )   Chicago, Illinois
                                     )   April 4, 2017
                 Defendants.         )   9:30 o'clock a.m.

               TRANSCRIPT OF PROCEEDINGS - MOTION
            BEFORE THE HONORABLE CHARLES P. KOCORAS

APPEARANCES:

For the Plaintiff:        MS. LISA CLAY
                          345 N. Canal St., Suite C202
                          Chicago, Illinois  60606


For the Deft. Long:       TAYLOR MILLER LLC
                          BY:  MR. BRENT TINKHAM
                          175 N. Franklin St., Suite 400
                          Chicago, Illinois  60606


For the Deft.             BURKE, WARREN, MACKAY & SERRITELLA P.C.
At World Properties:      BY:  MS. DANIELLE J. GOULD
                          330 N. Wabash Ave, Suite 2100
                          Chicago, Illinois  60611


Court Reporter:           MS. JOENE HANHARDT
                          Official Court Reporter
                          219 S. Dearborn Street, Suite 1744-A
                          Chicago, Illinois  60604
                          (312) 435-6874

            * * * * * * * * * * * * * * * * * *
                   PROCEEDINGS RECORDED BY
                   MECHANICAL STENOGRAPHY
                TRANSCRIPT PRODUCED BY COMPUTER
```

1          THE CLERK:  16 C 7419, Wood vs. Long.  Motion to
2  compel.
3          MS. GOULD:  Your Honor, Danielle Gould on behalf of
4  defendant @properties.
5          MR. TINKHAM:  Brent Tinkham on behalf of defendant
6  Long.
7          MS. GOULD:  Plaintiff's counsel was here and just
8  walked out.
9          THE COURT:  I think she was here and left and, then,
10 came, again, and left.  I do not know if --
11         MS. GOULD:  She sent --
12         THE COURT:  She filed an e-mail in which she says --
13         THE CLERK:  She is coming in now, Judge.
14         THE COURT:  Okay.
15         MS. CLAY:  I am very sorry, your Honor.  Lisa Clay on
16 behalf of plaintiff.
17         THE COURT:  That is okay.
18         Are you all right?
19         MS. CLAY:  No, I am not.  I would like you to let me
20 file a written response and come back in a week, if that is
21 okay with you.
22         THE COURT:  Well, let me see if I cannot simplify it.
23         You sent an e-mail dated yesterday at 8:26 a.m., in
24 which --
25         MS. CLAY:  Yes.

```
 1                THE COURT:  -- you say in the very second paragraph,
 2    "The documents at issue will likely be produced to Properties
 3    in the next few days, mooting the motion."
 4                Is that true?
 5                MS. CLAY:  Yes, that is correct.
 6                THE COURT:  Why is that not good enough?
 7                MS. GOULD:  Well, first of all, as I have told Ms.
 8    Clay, the motion seeks three things.
 9                MS. CLAY:  Your Honor, I can't do this.  If we need to
10    continue, then you are going to have to do it without me.  I
11    need to go.
12                I am very sorry.
13                THE COURT:  I just want her to --
14                MS. CLAY:  I have to go.  I am sorry.
15                (Whereupon, Ms. Clay exited the courtroom.)
16                THE COURT:  Well, tell me succinctly why we need to
17    have some hearing on this motion.
18                MS. GOULD:  So, there is three issues.  The first
19    issue relates to probation records.  And we have been asking
20    plaintiff to provide the executed consent to obtain the
21    probation records.
22                She was on probation for nine out of the twelve months
23    that she states she was working all of this time for the Long
24    Group.  And she also --
25                THE COURT:  You are giving me more than I asked for.
```

```
1              MS. GOULD:  Okay.  Okay.
2              So --
3              THE COURT:  I want to know why, if this is so -- that
4    they will be produced -- why --
5              MS. GOULD:  Okay.
6              THE COURT:  -- you must take issue with that
7    assertion?
8              MS. GOULD:  So, last week -- so, I am trying to push
9    to get the consent, and I would get different offers that were
10   less than -- we want the entirety of the records produced to
11   us.  And, so, then, counsel has claimed that -- last week that
12   -- the records were requested.  And, in fact, that wasn't true.
13             I believe that, as of yesterday, she may have
14   requested the records, but their position is that the records
15   can only be produced to them and subject to their review for
16   relevance of what they will give to us.  And that is the main
17   concern.
18             So, I think we are -- seem to be -- largely resolved
19   on that issue, but I have concerns with the fact that she is
20   the gatekeeper.
21             THE COURT:  Well, what is wrong with her -- because
22   this case has, how can I put this, an inordinate amount of
23   complexity for the nature of the case.
24             So, what is wrong with her looking at the documents
25   and presumably tendering them to you; or, if not, and she
```

```
 1   withholds some, she would have to tell me what she is
 2   withholding and, then, I would be the final arbiter as to
 3   whether or not her withholding is somehow proper or not proper?
 4            MS. GOULD:  It is that --
 5            THE COURT:  Are these documents that you have
 6   subpoenaed --
 7            MS. GOULD:  We subpoenaed --
 8            THE COURT:  -- or you just asked her for them?
 9            You asked her for permission to get these documents
10   or, what?
11            MS. GOULD:  These specific documents we did subpoena,
12   but the Hamilton County Court in Indiana said you have to have
13   a consent of the person or you have to go to court in Indiana
14   to get them released.
15            So, because of that, we are not in a position to just
16   subpoena them.  We need the --
17            THE COURT:  You mean, they would not honor a federal
18   court order to supply them?
19            MS. GOULD:  You know, in our interaction with them,
20   they seem to say, "No."
21            And, so, while I would love to say, "Yes," your Honor,
22   if I could have the order, that would be great.
23            THE COURT:  All right.
24            MS. GOULD:  I just don't -- I don't -- think that is
25   the case.
```

1          THE COURT:  All right.
2          I am going to short-circuit this because counsel is
3  not here and, for some reason, she seems upset about something
4  or other.  I do not know whether it is just this case or
5  something broader than that.
6          So, I am going to take her at her word that the
7  documents will likely be produced in the next few days, mooting
8  the motion.  I am going to take that as -- oh, here she is.
9          (Whereupon, Ms. Clay re-entered the courtroom.)
10         THE COURT:  Ms. Clay, do you want me to -- do you want
11 to just stay for a second?
12         MS. CLAY:  I don't, your Honor.  I am very sorry.  I
13 just can't do this right now.  I am so, so sorry.
14         THE COURT:  You cannot even hear -- you cannot even
15 listen -- to what I am going to say?
16         MS. CLAY:  No.
17         THE COURT:  It is not going to involve any give or
18 take.  I am just going to take you at your word in the e-mail
19 that the documents at issue will likely be produced in the next
20 few days, mooting the motion.  I am going to accept that as so.
21         And you can look at them.  Counsel says one of the
22 problems is -- are you still okay?  Are you with me?
23         That is it, sit down.
24         I think you can look at the documents; and, if you
25 think some should be withheld, you can withhold them, at least

1  in the interim.  But you have to tell counsel what you are
2  withholding.
3          And, then, what is going to happen is I will have to
4  do an in-camera review as to whether your withholding of
5  documents is proper or improper.  Okay?
6          But I am going to take you at your word that there
7  will likely be a production in the foreseeable future.
8          So, I am going to put an outside time period, so that
9  we can avoid any kind of greater tension that apparently
10 already is being experienced.
11         So, will three weeks be okay for you?
12         MS. CLAY:  That is fine, your Honor.
13         THE COURT:  All right.  We will give you three weeks.
14         And I will not hear any further argument and deny any
15 motion for production without prejudice and see how it comes
16 out.  All right?
17         MS. GOULD:  There were two other components to the
18 motion to compel and related to the probation records.
19         THE COURT:  What were those?
20         MS. GOULD:  So, we had a prior motion to compel
21 records -- basically, personal records -- that Ms. Wood would
22 have related to how she spent her time.
23         She is claiming to have worked, you know, around the
24 clock, essentially, for the Long Group.
25         And when you granted our motion, you asked that the

1  parties have a sampling of documents.  And we agreed to eight
2  weeks.  And at this -- but in that ruling, as well as a ruling
3  on seeking a consent to subpoena tax records, a large part of
4  your ruling was based on taking plaintiff at her word.
5       And, since that time, we have had a deposition where
6  it is abundantly clear that her word cannot -- I mean,
7  everything we are learning in this case, your Honor, is from
8  third-parties and only if it is forced out of plaintiff.  She
9  is not complying or providing information.
10      THE COURT:  Well, then, here is --
11      MS. GOULD:  And, so, we want to be able to get things
12 directly from a source --
13      THE COURT:  Okay.  Let me stop you because --
14      MS. GOULD:  -- and for her to be compelled to give
15 those documents.
16      THE COURT:  Okay.
17      Here.  I do not know the reference to "the documents
18 at issue."  It seems to encompass everything that is presently
19 in dispute.  So, here is what we are going to do.  I am going
20 to honor that and allow three weeks for that to happen.
21      And, so, what happens is if, in three weeks, it does
22 not come to pass, then you are going to have to file a motion
23 either for a compulsion or for sanctions or for something else.
24      The idea that the past is indicative of what may
25 happen in the future is something I am not going to sign off

1   on.  We will see if the production takes place.  And, if not, I
2   will deal with it and whether to order the production --
3   assuming you have a right to them or I have already ruled.  We
4   will see how it all plays out.
5          But I think, under present circumstances, we ought to
6   honor the idea that there will be a production and I will allow
7   three weeks for that to happen.  Okay?
8          That is all I will hear this morning.
9          MS. GOULD:  If I could just clearly.
10         THE COURT:  No, there is nothing to clarify.
11         MS. GOULD:  Okay.
12         THE COURT:  What do you not understand?
13         MS. GOULD:  It is just that they are totally different
14  sets of documents.  So, I am just trying to make sure --
15         THE COURT:  Well, she does not differentiate here in
16  her letter to me.  It is "documents" plural.  There is no
17  delineation of what kind.
18         So, I will assume --
19         MS. GOULD:  I see.
20         THE COURT:  -- that "the documents at issue," that
21  would encompass everything you have asked for.
22         MS. CLAY:  That will not, your Honor.
23         Here is my problem.  I got in the elevator this
24  morning and the reason that I cannot stop crying is that my
25  client is suffering.  And I have asked you to put limitations

1 on what this woman is doing.  I have explained in excruciating
2 detail what is going on in this case.  And I asked you to
3 extend two weeks so that I could get her hospitalized and get
4 her treatment.  And you didn't do that.
5           And, so, I got in the elevator this morning and I lost
6 it.  And I don't feel like I should continue in this case --
7           THE COURT:  What is --
8           MS. CLAY:  -- because I can't protect my client, your
9 Honor.  And that is my job.  My job is not about this fucking
10 FLSA matter.  It is about the fact that my client is suffering.
11 And I asked for two weeks to get to the bottom of that and I
12 didn't get it.
13           THE COURT:  You asked for two weeks so she could be
14 hospitalized?
15           MS. CLAY:  Yes.
16           THE COURT:  When did you do that?  I do not recall
17 that.
18           MS. CLAY:  Last night.
19           THE COURT:  Last night?
20           MS. CLAY:  I am sorry, yesterday.  I sent an e-mail to
21 Vettina and asked that she get it to you so that we could not
22 be here this morning.  That is the reason I am upset.
23           And here we are and I have asked Ms. Gould, I don't
24 know how many times, "Could just please -- "
25           MS. GOULD:  I have to be able to defend myself.  This

1 is not okay.

2       MS. CLAY: " -- let me do this for my client?"

3       THE COURT: Yes, I will let you do that, but let me
4 tell you something.

5       I appreciate the case may be difficult for you and it
6 may be difficult for your client. But one of the things we do
7 not do is deal with e-mail transmissions back and forth, and
8 for me to rule on these e-mails without the other side being
9 here. We have rules in place for when you want some relief,
10 you have to do it in the proper way.

11       Now, if you do not want to follow those rules, then we
12 are not going to get anywhere.

13       So, the idea that I would not give you time to
14 hospitalize your client, I actually do not appreciate that
15 assertion. All right?

16       And I do not know what the full extent of your e-mail
17 is, but if you have an emergency matter, then you come here in
18 the morning and say, "My client cannot honor the request
19 because she needs hospitalization for," various. And I am not
20 going to deny anyone who tells me their client needs
21 hospitalization.

22       But the idea that your e-mail should be sufficient and
23 for me to act on it, without regard to anything else or without
24 regard to seeing you and having you tell me that in person, is
25 not the way we do business around here.

1  And I appreciate the fact that there may be a
2  legitimate request here, but we cannot at least change entirely
3  the rules and deal on an e-mail basis because there is some
4  difficulty for you appearing here because of your client's
5  condition.
6  Do you understand that?
7  MS. CLAY: I understand that perfectly.
8  THE COURT: All right.
9  So, that is how we are going to do it. I am giving
10 you three weeks to respond, which should accommodate your
11 ability to have your client get hospitalized or get some
12 treatment. And if that is not long enough, then come in and
13 tell me that. All right? But that is how we are going to do
14 it.
15 So, that is all we will deal with this morning.
16 MS. GOULD: Thank you, your Honor.
17 MR. TINKHAM: Thank you, your Honor.
18 \* \* \* \* \*
19 I certify that the foregoing is a correct transcript from the
   record of proceedings in the above-entitled matter.
20
21 /s/ Joene Hanhardt                April 11, 2017
   Official Court Reporter
22
23
24
25